## MESICK v. SUNDERLAND.

A conveyance of "the following described property, situate, lying and being in the city of Sacramento and State of California, consisting of two thousand two hundred town lots, be the same more or less, said lots being bounded according to the original plat, or plan of said city," is void, on account of a patent ambiguity which cannot be cured by parol evidence.

Where the same deed contains a covenant that, in case the grantees therein named shall pay a certain sum of money before a certain day, "then this instrument is to take effect as a full and complete conveyance in fee of all and singular the lands, tenements, hereditaments, appurtenances and real estate in the State of California, belonging to, or in which the said party of the first part, his heirs, executors, administrators or assigns, is or are in any way entitled or interested," *Held* that the payment of the purchase money was a condition precedent to the vesting of the legal estate; that it was the event which cast the title, and not the deed; and the rational intention, gathered from the terms of the instrument, is, that the grantor only bound himself to convey upon the payment of the purchase money.

Where the plaintiff in ejectment claimed under a subsequent deed from the grantor in the above instrument, and the defendants held under the grantees named therein, *Held* that the record of said instrument, in the county recorder's office, made June 20, 1850, imparted no notice to the plaintiff, who purchased July 9, 1855; the registration of executory contracts not being authorized or made notice by statute.

The intention of the Recording Act of this State was to protect the purchaser of the legal title against latent equities, or mere executory agreements, and to abolish the presumption of notice, arising from possession.

APPEAL from the District Court of the Sixth Judicial District.

This was an action of ejectment to recover possession of a block of land in Sacramento City, bounded by S and T, Ninth and Tenth streets. The complaint alleges that on the 7th of May, 1850, John A. Sutter was legally seized in fee, and in possession, of the land in question; that he conveyed the same to John A. Sutter, Jr., on that day; and that J. A. Sutter, Jr., conveyed the same to plaintiff July 9, 1855. The complaint then sets forth in full the deed or executory contract from John A. Sutter, Jr., to Samuel Brannan, S. C. Bruce, Julius Wetzlar and

J. S. Graham, which is copied in full in the opinion of the Court. The complaint also states that the said instrument was recorded in the county recorder's office of Sacramento county June 20, 1850, and that the defendant holds the lots by various mesne conveyances from the grantees, in said instrument named above, and has no other claim or title thereto, and has unlawfully entered thereupon and withholds the possession thereof, etc. The defendant demurred to the complaint, upon the following grounds :

1. That the complaint does not state facts sufficient to constitute a cause of action.

2. The complaint shows that defendant has a good and sufficient title in law.

3. The complaint shows that the deed, under which plaintiff claims title, was executed long after the deed by John A. Sutter, Jr., to Brannan, Bruce, and others.

4. The complaint shows that the plaintiff's grantor had no title when he conveyed to plaintiff.

The Court below sustained the demurrer, and entered judgment for defendant. Plaintiff appealed.

*Edwards & English* for Appellant.

The question is, does the instrument set out in the complaint, under which defendant claims, convey the legal title to the block of lots in dispute. If it does, then the judgment of the Court below is correct—if it does not, the judgment of the Court is wrong.

We say that it does *not* convey the legal title to the property sued for.

The rule is that the thing conveyed must be described in the deed with such certainty, that from the description given in the deed, the thing may be distinguished and identified. If it is not so described, the grant is void for uncertainty. Chinoweth *et al. v.* Lessee of Haskell *et al.,* 3 Peters, S. C. R., 96 ; Blake *v.* Doherty, 5 Wheat., 359 ; United States *v.* King, 3 How. S. C. R., 786 ; Doe *v.* Curtis, 3 How. (Miss.) R., 234 ; Pease *v.* Owens, 2 Hayw., 234 ; Neal *v.* Hughes, 10 G. & John., 7 ; Kea *v.* Robison, 5 Ired. Eq., 378 ; Mundy *v.* Vawter *et al.,* 3 Gratt., 545.

Can the Court tell how many lots in Sacramento are intended to be conveyed by this part of the instrument ? It does not say all the interest of the grantor in the city of Sacramento, but says, " twenty-two hundred lots, more or less." How many more, or how many less, can the Court, can anybody tell ? or, can the Court tell *which* of the eight thousand lots in the city are intended to be conveyed ? Does the description inform any body *which lots* are conveyed, and could such an instrument, when recorded, impart notice ? These are questions which must be answered in the negative. We say, then, that from the description given in the deed, the lots cannot be distinguished and identified. It follows, therefore, that the first part of the instrument would not have conveyed the title to the block of lots sued for, though had it stood alone and by itself, it would have been a conveyance.

Let us see whether the subsequent portions of the instrument aid the defendant.

The next clause is a covenant that the party of the first part will appoint, and does appoint, the parties of the second part, his attorneys, to take possession of "all such lands, tenements, hereditaments and real estate, whatsoever and wheresoever, in the State of California, to or in which the said party of the first part is, or may be in any way, entitled or interested," and to sell and convey the same, and for and in the name of the said party of the first part, to make, execute and acknowledge and deliver deeds for the same, and until sold to lease. Now, the lands referred to in this clause are either the lands mentioned in the foregoing part of the instrument, or they are other lands. If they are other lands than those mentioned in the foregoing part of the instrument, the defendant is not aided by this clause, for he does not claim the property in dispute under any instrument executed by Brannan, Bruce, Graham and Wetzlar, as the attorneys of Sutter, Jr., but under conveyances executed by them in their individual names. If, on the other hand, they are the lands mentioned in the foregoing part of the instrument, then the clause will aid us to understand the character of the instrument.

The rule of law upon this subject is, that though a deed may in one part use the formal and apt words of conveyance, yet if from other parts of the instrument it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail. Jackson v. Myers, 3 Johns. R., 396; Jackson v. Clark, 3 Johns. R., 424; Jackson v. Moncrief, 5 Wend., 29; Ives v. Ives, 13 Johns., 235; Foster v. Foster, 1 Lev., 55; Stouffer v. Coleman, 1 Yeates, 398; Sherman v. Dill, 4 Yeates, 298; Morgan v. Bissell, 3 Taunt., 66; Kenrich v. Smith, 7 Watts & Serg., 45.

The Court will perceive that Sutter, Jr., covenants not to sell or dispose of "any lands, tenements, hereditaments and real estate whatsoever, to which he, the said party of the first part, is or may be in any way entitled;" using pretty much the same language as in the power of attorney clause. The lands referred to in this clause, at present under consideration, are either the lands mentioned in the first part of the instrument which we considered, or they are other lands. If they are other lands, the clause does not help the defendant, for it cannot possibly be construed as conveying, or aiding to convey, title to anything. If, on the other hand, they are the same lands, why was this covenant inserted?

The next clause in the instrument reads as follows : "And the said party of the first part, his heirs, executors, administrators and assigns, doth further covenant to and with the said parties of the second part, their heirs, that in case the said parties of the second part, their heirs and assigns, pay, etc., then this instrument is to take effect as a full and complete conveyance in fee of all and singular the lands, tenements, hereditaments, appurtenances and real estate, in the State of California, belonging to or in which the said party of the first part, his heirs,

executors, administrators or assigns, is, or are, in any way entitled or interested."

As in the other covenants, so in this, the words "all and singular the lands, tenements, hereditaments and real estate in the State of California, belonging to or in which the said party of the first part, his heirs, executors, administrators or assigns, is or are in any way entitled or interested," must either refer to the same lands mentioned in the first part of the instrument which we considered, or to other lands. If it refers to other lands, the instrument cannot operate to convey the legal title to those other lands, for it is a rule of law that nothing can pass by a deed that is not expressly mentioned, or contained by implication, in the *premises* of the deed, and by the *premises* is understood that part which precedes the *habendum.* 2 Thomas Coke, 240, side page; 4 Cruise Digest, 290, § 73; 4 Bacon Abr., p. 529, Title Grant, Letter 1, No. 2; Manning *v.* Smith, 6 Conn., 292.

But again, admitting for the sake of argument that this instrument had been intended by the parties to take effect as a conveyance *in presenti,* but to create an estate in fee simple to commence *in futuro,* we say that an estate in fee simple to commence *in futuro* cannot be created by deed in this State.

The statute of this State introducing the common law, does not introduce any of the English statutes amendatory of the common law.

There is no question as to the position that at common law no estate of freehold can be granted to commence *in futuro.* 1 Saund. on Uses and Trusts, 136, side page; 2 Thomas Coke, top page, 465 n.

And, therefore, it is that an estate of freehold to commence *in futuro,* cannot be created by a common law conveyance, but all such conveyances are void. Roe *v.* Tranmer, 2 Wils., 77; 2 Bla. Com., 166, side page; Wallis *v.* Wallis, 4 Mass., 136.

The deeds by which estates of freehold to commence *in futuro* can only be created, are known technically as deeds of bargain and sale and of covenant, to stand seized to uses, which two classes of deeds derive their force and efficacy from the twenty-seventh statute of Henry the Eighth, commonly known as the Statute of Uses. 2 Thomas Coke, 467–8, top page.

This statute not being in force in this State, the instruments of conveyance which derive their efficacy from this statute possess no validity in this State. Deeds of bargain and sale, and of covenant to stand seized to uses, the one founded on a valuable consideration, the other upon the consideration of blood or marriage, by which alone estates of freehold to commence *in futuro* could have been created, are void here.

The rule has always been, that an equitable right could not be set up to defeat a recovery in ejectment upon the legal title. "A defendant, in ejectment, can never defend his possession against the plaintiff upon a title in himself, by which he could not recover the possession if he were out, and the plaintiff in possession." Lessee of Hickey *v.* Stewart *et al.,* 3 How. S. C. R., 759, 760; Dewitt *v.* Hays, 2 Cal. R , 468;

Mesick v. Sunderland.

Minturn v. Hays, 2 Cal. R., 593; Smith v. Rowe et al., 4 Cal. R., 7; Mayo v. Madden, 4 Cal. R., 28; Modisett v. Johnson, 2 Blackf., 439.

The Court will see, by reference to the instrument, that its premises purport to *describe* the property. Now what property is described? A certain portion of a lot two; certain interests in the town of Eliza; certain lots in Plumas city, and other town lots set forth in the instrument. The words " consisting of town lots," do not describe or identify the property, or attempt to identify it. They merely show the class or kind of property. When the instrument purports to *describe* the property, and does describe property, will anything pass but what is described? We say it will not : the general rule being that a particular specification or description will exclude things not specified or described. *Expressio unius est exclusio alterius.* 2 Hill on Real Prop., p. 337, § 42; Hare v. Horton, 5 B: and Ad., 715; Broom's Maxims, 507.

If the parties *omitted descriptions*, those omissions cannot be supplied from arbitrary conjectures, though founded upon the highest degree of probability. Dismukes v. Wright, 4 Dev. and Bat., 207; Kea v. Robison, 5 Ired. Eq., 379.

The defendant appeals to the covenants to aid him, but when it is considered that a covenant in a deed is but an agreement, for breach of which the grantor is liable in damages, it cannot be held in any case to enlarge the subject matter of the grant. The covenants in a deed have reference to the grant, and are qualified and limited by it. Allen v. Holton, 20 Pick., 464; Den v. Young, 3 Iredell, 379; Hurd v. Cushing, 7 Pick., 175; Ed. Seymour's Case, 10 Coke R., 97. a.; Ingram v. Porter, 4 McCord, 202.

*Harmon, Sunderland & Stanley*, for Respondent.

1. The deed on its face is either sufficiently certain in its description of ·the property intended to be conveyed, to pass the legal title, or the uncertainty is such as admits of parol proof; and the grantor intended to pass the legal title *in presenti.*

2. If from the whole deed the legal title did not pass to the grantees at the time of execution, still the *equitable* title passed then, or upon payment of the purchase money.

3. This equitable title is a good defence to the action of ejectment.

To take up the first proposition, we maintain the description in the *premises* of the deed, to be in law clear as to the property intended to be conveyed. The grantor conveys "all his estate in law or equity to the following described property, situate in the city of Sacramento, State of California, *consisting* of 2200 town lots, more or less." That the design was to sell 2200 lots, if the grantor owned so many, is beyond question. Whether this design is clear or not as to what 2200 lots, does not alter the fact that he did so design.

Again, the language of the description shows the intent to pass all the landed estate of Sutter in the city of Sacramento; and this is, confessedly, a good description. The words are not, as appellant's counsel quote in their brief, " two thousand two hundred town lots, more or

less, etc.;" but "all the estate, etc., of the grantor in the following property, situate in the city of Sacramento, consisting of 2200 town lots, more or less." We submit there is a marked difference; especially when the intention is sought. Sutter did not design conveying *any* particular 2200 lots, or he would have so said; either by indicating between what blocks or streets, or by giving the precise number of each lot. Nor would he have used the words "more or less." If his mind were fixed upon special lots, each lot known to him to be eighty feet by one hundred and sixty feet, how absurd to add "more or less." The use of the words, "all his estate in the following property situate in Sacramento," "consisting of," and "more or less," is very strong, if not conclusive evidence of his intention to convey all his land in Sacramento, and of his belief that 2200 lots would cover his entire interest. In this latter view, the words "two thousand two hundred" may be stricken out, and then the deed is certain.

Where parts of a description are incorrect, and thus an uncertainty arises, the words creating the uncertainty may be disregarded, if the remainder of the description renders the intent clear. The addition of false or mistaken circumstances will not frustrate the grant. Jackson *v.* Root, 18 Johns., 78; Loomis *v.* Jackson, 19 Johns., 449; Jackson *v.* Clark, 7 Johns., 223.

Again, in construing deeds, the law allows us to transpose words and sentences, if by this means that which was doubtful can be made certain. Punctuation and collocation, in modern times, may be entirely abandoned; and will be, rather than permit a solemn deed to fall. Finlay *et al. vs.* King's Lessee, 3 Peters, 383.

Upon this principle, let us transpose the words "two thousand two hundred," and read the clause thus: "consisting of town lots, two thousand two hundred, be the same more or less," and all difficulty vanishes. The error of appellant's argument consists in the assumption, that by mentioning a specific number of lots, the grantor shows his intention to dispose of particular pieces of land; whereas, this no more results from the terms "two thousand two hundred" than the contrary results from the terms "be the same more or less." Andrews *v.* Murphy *et al.*, 12 Geo., 431; Adams *v.* Frothingham, 3 Mass., 352; 4 McCord, 12; 18 Johns., 60; 3 Johns., 484; Jackson *v.* DeLancey, 11 Johns., 367; Starling *v.* Blair, 4 Bibb, 288; Adams *v.* Cuddy, 13 Pick., 460; Ward *v.* Bartholomew, 6 Pick., 409. In all these cases the deeds were held good, either because the description was in itself certain enough, or because parol evidence was admitted to aid the description. And yet most of them are as vague as plaintiff contends the deed from Sutter to Brannan *et al.* to be—some of them far more so. For instance, the case in 3 Mass., 352: "a piece of land below high water mark to set a shop upon, not to exceed forty feet in width." As it is asked here, what 2,200 lots? So we ask, what land, what high water, and what depth? Upon the face of the paper there is no indication.

Whatever may be the proper name for this instrument, whether a deed or an executory agreement, one thing is plain: Sutter intended it to

operate upon all his lands in California. And the question arises, will not the Court call upon the covenants, in the latter part of the instrument, to aid and strengthen the *premises* and *habendum?* Undoubtedly. The former part of this instrument is a simple deed. The covenants in the latter part must be resorted to, not to destroy, but to uphold and throw light upon the first expressed intention of the grantor. Hence, as these covenants, and these acts of possession relate to all land in California, so the *premises* will be construed.

It is no answer to say, as do the counsel for appellant, that the covenants in a deed cannot extend the subject matter. Because, though the covenants cannot enlarge the *premises*, yet they may be "resorted to in aid of construction, when the question is as to what was conveyed." 22 Vt., 98.

Let us now seek the intention by calling in parol evidence to aid the description in the deed. And first, we assume the admissibility of such evidence, in order to ascertain its effect; subsequently, we will attempt to show our assumption to be law.

In seeking for the true construction of the entire latter portion of this deed, as affecting the description of property in the premises, the *fact* that the grantor at the execution of the deed *owned no other land*, would be most important. Could it be shown, *aliunde*, that the land in Sacramento, in Eliza, Plumas City, Nicolaus and San Francisco, embraced all Sutter's estate in California, then the covenants, subsequent to the *habendum*, taken in connection with that part of the *premises* which refers to lots in the city of Sacramento, would make clear the intention to convey all the lots in said city. For, in this event, the covenants, on their face extending to all land in California, would necessarily include the city lots.

Again, let it be shown, *aliunde*, that the grantor, immediately after making the deed, did in fact comply with his covenants by putting the grantees in possession of all his lots in Sacramento, as well as of all his land elsewhere, that the grantees or their grantees, from the date of the deed to the present time, have maintained such possession with the knowledge and consent of the grantor, and the inference that the description in the premises covers all the lots in Sacramento, and not simply 2,200 lots, is irresistible.

That evidence of these facts is admissible, see 2 Hilliard, 328, § 33, where it is said, "in the construction of a grant, the Court will take into view the attendant circumstances, the situation of the parties, the state of the country, and of the thing granted." See also 3 Mass., 361; 13 Peters, 99.

But it is argued that such evidence is admissible only in the case of a latent ambiguity, and that the ambiguity here is patent, and therefore within Lord Bacon's rule, that, " *ambiguitas patens* is never holpen by averment."

We reply, 1st. That the ambiguity in the description is not patent within the rule as explained by adjudged cases; and 2d. That some patent ambiguities may be removed by parol evidence. Fisk *v.* Hub-

bard's Administrators, 21 Wendell, 652. See also the case of Bradley, 13 Peters, 98; Colpoys v. Colpoys, Jacobs' Rep., 464. See also,. 1 Vesey, Jr., 264, where, in a note to Baugh v. Read, Mr. Sumner approves the doctrine. Also, 1 Wendell, 551, note a; Cowen & Hill's Notes, part 2, note 269, p. 524.

We hold, therefore, that the ambiguity, if any, in this deed may be explained by parol evidence; and if so, the deed is not void for uncertainty, upon the principle that *id certum est quod certum reddi potest.*

Hitherto, we have discussed our first proposition on the assumption that the instrument in question is a *deed* simply; but before proceeding to our second proposition, we offer some remarks upon the point, that the whole instrument constitutes a deed and *mortgage,* or a deed with a vendor's lien retained.

Considering, then, the description as certain enough to pass a fee, we maintain that the covenants indicate the intent, on the part of the grantor, simply to take a mortgage to secure the payment of the purchase money.

Divide this instrument into two parts, the one consisting of the premises and *habendum,* and the other of all the subsequent covenants, execute them separately and record them at the same time, and, beyond question, the Court would pronounce the second instrument a mortgage or vendor's lien. And upon the principle that separate instruments executed at the same time, in relation to the same subject matter (and this may be shown *aliunde,*) will be construed together, and regarded as one instrument; just as all the clauses of a single deed must be construed. The maxim being "*Ex antecedentibus et consequentibus fit optima interpretatio.*" See Hills v. Miller, 3 Paige Ch. R., 256; 2 Hilliard, 323, § 3; 1 Johns. Cas., 92; 5 Pick., 181; 4 Mass., 569.

As bearing upon this point, as well as upon the true intention of the whole instrument, we say here that the defendant is entitled to recover by the doctrine of *election.* 1 Wharton, p. 303, 317, Krider v. Lafferty. See also 16 Johns., 178, and cases there cited; 2 Nott & McCord, 400.

2. If from the whole deed the legal title did not pass to the grantees at the time of execution, still the equitable title passed then, or upon the payment of the purchase money.

The covenanting part of this instrument is in effect a *covenant to stand seized.* To make a deed of this character, no particular form of words is necessary. The proper words are, " covenant to stand seized to the use of A." But any other words, such as " bargain and sell," " give, grant and confirm," will answer, if the intent of the parties was to make this covenant. A deed defective for want of livery of seizin, or for commencing *in futoro ;* or for want of the statute number of witnesses; may take effect as a covenant to stand seized. 2 Greenleaf's Cruise, Title 32, Deed, Ch. 10, pages 149, 150, and notes; 7 Pick., 111; 20 Johns., 85; 2 Smith's Leading Cases, 288, and notes. A deed, in whatever form, may be treated as any species of conveyance which will best effectuate the intent of the parties. 1 Greenleaf's Cruise, Title

12, Trust, Ch. 11, pages 339, 340, and note; 4 Mass., 135; 8 Pick., 147; 7 Mass., 381.

Now the covenants to put the party in possession, "not to sell," "to take effect as a full and complete conveyance" on the payment of the purchase money, are equivalent to a covenant to stand seized of the legal title for the benefit of the grantees.

If so, the grantees held the equitable title from the date of the instrument, and on payment of the money were entitled to a conveyance of the legal estate. And this, whether the English Statute of Uses is in force here or not. Because conveyances, by bargain and sale, and covenants to stand seized, were in use before the statute; though they could not pass the legal title to the usee. Equity, however, deemed the entire estate to be in the person for whom the use was raised, and compelled the owner of the legal estate to transfer it to the usee. The statute, subsequently, did the same *eo instanti* with the conveyance to a use. So that, independently of any statute of uses, the covenants in this deed raise an equity in favor of the grantees. See 1 Greenleaf's Cruise, Title Trust, p. 338, and Story & Kent.

Without going into a labored discussion of this point, we content ourselves with saying that this "blood and marriage" consideration in this particular covenant, has been generally *assumed* to be necessary, or the reasons assigned are strained and devoid of respectability or force in this country. And in the only cases we find where the naked question has come up for decision, the dogma has been rejected. "In England it is only since the Statute of Enrollments, 27 Hen. VIII, it has been established that no considerations but blood or marriage are sufficient to raise a use by way of covenant to stand seized." Before that statute, covenants to stand seized could be supported by pecuniary considerations. 10 Bacon, p. 190, § 2; 1 Johns. Cas., 97; Jackson *v.* Dunbaugh, and note; Sanders on Uses, pp. 434, 440; 6 Wendell, 626. The English Statute of Enrollments not being in force here, the law stands as it did before the statute. See also 2 Greenleaf's Cruise, Title 32, Deed, Ch. 10, p. 152 note, 155 note 1; and also 7 Mass., 381; 4 Mass., 435; where deeds of lease and release founded on a pecuniary consideration, were construed to be covenants to stand seized.

The remedy in case of a violation of this covenant was at common law an action for damages, or in equity for specific performance. Since the statute of Hen. VIII, the use is executed into a legal estate, and the necessity of resorting to equity is obviated. Here, however, on the supposition that this statute is not in force, the equitable relief remains.

We do not wish, from the foregoing reasoning, to be understood as assenting to the position that the Statute of Uses is not in force in this State.

The words "bargain and sell" are the usual words of grant in this State; and, as those words, confessedly, pass the fee, and that, too, without any peculiarity in our statute, it might well be said that so far as the statute of Henry is requisite to translate the estate raised by these words from an equity into a legal title—so far this statute is in force.

Again, the argument against the force of this statute here, is advanced in order to prevent an estate *in futuro* from arising upon the covenants. It is conceded that a bargain and sale to take effect *in futuro* is good. See 2 Hilliard, 310, § 12; 9 Wendell, 611; 11 Johns., 351; 20 Johns, 87. But it is said to be so because of the Statute of Uses. On the contrary, we hold that so far as this statute is essential to enable a deed of bargain and sale to pass the title at once, it is in force. For example: is not a " conveyance to A," reserving a " rent to the grantor for life" good to vest the legal estate in A ? In 20 Johns., 85, James Wood, for $50υ, made a deed to Joseph Wood, and after a description of the premises, are these words : " it is understood that the parties of the first part reserve to themselves the use of the premises during their natural lives ;" and the deed was held good, although it was to take effect *in futuro*. And we submit that such a deed is good in California. Compiled Laws, p. 513, § 1; Compiled Laws, p. 200, § 6; p. 202, § 25; p. 203, § 26.

Plaintiff must yield this much; that these covenants constitute an agreement that the grantees should be the owners of all the lands of the grantor in California when the money was paid; and its payment is admitted on the record. Now this gives us the equitable title at least, and not a mere action for damages. Equity considers that as done, which is agreed to be done. He who purchases with notice of an equity in another, becomes a trustee for that other. " After a valid contract for the purchase of land, the vendor is in equity seized of it for the benefit of the purchaser." 2 Story's Equity, § 790 ; 3 Johns., Ch. 316; Livingston *v.* Newkirk ; 1 Sugden's Vendors, Ch. 4, § 1, ¶ 1, p. 201 ; 1 Greenleaf's Cruise, Title 12, Trust, Ch. 1, p. 357, § 41 ; 2 Vesey, Jr., Taylor *v.* Stibbert, 443, note 2, and authorities cited; 16 Vesey, Jr., 254 ; Krider *v.* Lafferty, 1 Wharton, 303, 317.

3. An equitable title is a good defence to an action of ejectment.

If it has been established that an equity arose in favor of the grantees upon the payment of the $125,000, so that it would be against conscience to enforce the legal title subsequently acquired by plaintiff, then the question comes up, is this equity a defence in the present action ; or must the defendant be driven to his remedy in chancery, to compel plaintiff to execute to him the fee ? We answer, the defence is available here, both on reason and authority. Under the old forms of pleading, and under the distinct jurisdiction of law and equity, an action of ejectment could not be defeated by setting up an equitable title. This was, on the whole, the better opinion, though many Courts and able Judges held differently.

But since the new codes of procedure, as established in New York, Ohio, Missouri, Texas and California, by which the distinction between actions at law and suits in equity is abolished, there is no longer any reason for the rule. See 5 Texas, p. 30 ; 2 Kernan, 266, Crary *v.* Goodman ; Neil *v.* Keith, 5 Tex. R., 30 ; 12 Peters, 11.

*V. E. Howard* for Respondent.

1. It cannot admit of reasonable doubt, that it was the intention of the grantor to convey all the right, title and interest, which he possessed at the date of the deed, in the city of Sacramento.   That is apparent from the language used, " 2200 lots more or less."   The plat or plan, is made a part of the description, and is as much in the grant as though the boundaries upon it were expressly mentioned in language. 4 Wheat., 449; Alexander v. Lively, 5 Munroe; Bell v. Hickman, 6 Humph., 400; 17 Mass. R., 207.

2. There is no patent ambiguity on the face of the deed.   It does not appear that there were more than 2200 lots in Sacramento at that time.   The language used rather assumes that there were no more than that number.   No ambiguity can arise, except by going out of the deed by proof *aliunde*, and then it is competent to explain it, by showing what lots the grantor owned within the city.   *Note 269 to vol. 4 of* Phil. Ev., p. 524; Starling v. Blair, 4 Bibb, 288; in point as to description.

It was evidently the intention of the parties to convey the whole interest of Sutter in the city.   Not merely 2200 lots, but all the lots he owned, more or less.   They would have passed if there had been ten or ten thousand.   4 Kent, 515, 466.

The number of lots may be rejected all together.   They are not necessary to the description or the operative words of the grant.   4 Bacon, 521, 524, Tit. Grant H.; 2 Met. R., 41–4; 2 Cush., 392.

If Sutter had owned more than 2200 lots in Sacramento at the date of his deed, still it would have been good by election, even if he had been limited to that number.   4 Bacon, p. 528, Grant; Fremont's Case, 17 Howard.

It is sufficient if the deed correctly describes land by its quantities and occupiers, though it describe it as being in a parish in which it is not, the land shall pass by the deed.

Lambe v. Reaston, 5 Taunton, 207, 1 Eng. Com. Law R., 113, Lord Mansfield puts the case on the ground of the intention of the parties and the occupation of the premises.

The deed in this case, as to the payments and the right of the grantees to take immediate possession, and convey as agents, shows that the grantor held and delivered possession to the grantees.

The complaint also shows, that the defendant took possession of this particular lot as one conveyed under the deed, which must come in aid of the description.

Words of general description in a deed or mortgage of land are sufficient to pass the grantor's estate.   Thus a grant of land in a patent of B, and of all other lands belonging to the grantor in the province of New York, will pass the residue of his lands in New York.   Jackson v. Delaney, 11 Johns., 365.

There is a vast difference between an especial description of a particular thing, which must stand by itself, and a general description which may be aided by reference to something else and proof *aliunde*.

Field v. Huston, 8 Shep., 69, or 21 Me. R.; 4 Bacon, p. 524,

Grant; Harmon *v.* James, 7 Smedes & M., 111; 2 Met., 44; 5 N. H. R., 127; 3 Grattan, 518; Benton *v.* Morris, 15 Ohio, 408.

3. The deed of Sutter, if a condition, is a condition subsequent as to the payments. That is evident from the fact that the grantee had a right to enter upon the estate, enjoy, and transfer it presently. These are conditions which could not in their character, be precedent. The character of the conditions will be determined by the intentions of the parties as gathered from the whole instrument. King *v.* Findley, 3 Peters, 346.

The deed in the first part is an absolute conveyance in fee. In the subsequent clause there is a provision that it shall " take effect as a full and complete conveyance in fee," when all the money is paid. The legal effect of this provision is merely to declare a mortgage in the deed. Conditions are not favored in law. Craig *v.* Wells, 1 Kernan, 315, and must be clearly expressed; 4 Metcalf, 523. 4 Kent, 130, as a condition precedent it would be repugnant, and therefore void. 2 Grlf's Cruise, pp. 300, 307, tit. 32.

It is a mere charge upon the estate. 1 Hill'd, p. 348, and note; Tuft *v.* Morse, 4 Metcalf, 523; Fox *v.* Phelps, 17 Wend., 405.

If Sunderland's title is a mere executory contract, as contended, or a mere equity, still he may rely upon it as a defence against the legal title, as it is fully set out in the complaint. Under our system of pleading and practice, an equitable defence may be interposed, as an answer to the action. Such is the present practice in New York, Pennsylvania and Texas. Neill *v.* Keese, 5 Texas, 22, 30; 2 Kernan, 266.

Again, the instrument from Sutter to Brannan and others, contains a power of attorney, irrevocable, executed for a valuable consideration, authorizing the grantees to take possession of and sell all his real estate in California. He was, therefore, estopped to convey, by the terms of the power, as the record shows no default in the payments. The registry of the powers, as well as the possession of the defendant, was notice to plaintiff. 2 Hilliard, p. 395, No. 68.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice TERRY concurred.

This was an action of ejectment in the Court below. The plaintiff and defendant both deraign title from a Mexican grant to John A. Sutter, and from him to John A. Sutter, Jr. The deed under which the defendant claims is as follows :

" John A. Sutter, Jr., to Saml. Brannan, Saml. C. Bruce, Julius Wetzlar and James S. Graham. This indenture, made the twentieth day of June, in the year one thousand eight hundred and fifty, between John A. Sutter, Junior, of the city of Sacramento and State of California, of the first part, and Samuel Brannan, of the city of San Francisco, one-fourth interest; Samuel C. Bruce, of the city of Sacramento, one-fourth interest; Julius Wetzlar, of the city of Sacramento, one-fourth interest; James S. Graham, of the city of San Francisco,

Mesick *v.* Sunderland.

one-fourth interest, parties of the second part; Witnesseth that the said party of the first part, for and in consideration of the sum of one hundred and twenty-five thousand dollars, ($125,000,) in hand paid by the said parties of the second part, the receipt of which is hereby acknowledged, hath granted, bargained and sold, and by these presents doth grant, bargain and sell unto the said parties of the second part, and to their heirs and assigns forever, all the estate, right, title interest, claim or demand, whatsoever, of him the said party of the first part, either in law or equity, of, in and to the following described property, situate, lying and being in the city of Sacramento, and State of California, consisting of two thousand two hundred (2200) town lots, be the same, more or less, said lots being bounded according to the original plat or plan of said city."

Here follows the particular description of the several lots and tracts of land, to which this opinion is not intended particularly to apply.

"Together with all and singular the tenements, hereditaments, privileges, and appurtenances thereunto belonging, or in any way appertaining. To have and to hold the above granted premises unto the said parties of the second part, and to their heirs and assigns, to their use, benefit and behoof forever. And the said party of the first part, for himself, his heirs, executors and administrators doth hereby covenant to and with the said parties of the second part, their heirs and assigns, that the title to the property of the party of the first part, above conveyed or intended to be conveyed by the said party of the first part to the said parties of the second part, their heirs and assigns, he will forever warrant and defend against the claim or claims of all persons whatsoever.

"And the said party of the first part doth further covenant to and with the said parties of the second part, their heirs and assigns, that he, the said party of the first part, shall, and will make, constitute, and appoint, and by these presents doth make, constitute, and appoint the said parties of the second part, his true and lawful attorneys for him, and in his name, place, and stead, to enter into and take possession of all such lands, tenements, hereditaments and real estate, whatsoever and wheresoever, in the State of California, to and in which the said party of the first part is or may be in any way entitled or interested, and to grant, bargain, sell, and convey the same or any parcel thereof for such sum or price, and on such terms as to them shall seem meet, and for him, the said party of the first part, and in his name to make, execute, and acknowledge and deliver good and sufficient deeds and conveyances for the same, and until the sale or sales thereof, to let and demise the said real estate and to ask, demand, destrain for, collect, recover, and receive all sums of money which now are, or may become due and owing to said party of the first part, his heirs and administrators, executors and assigns, by means of such bargain and sale, or lease and demise, giving and granting unto the said parties of the second part, their

heirs and assigns, full power and authority to do and perform all and every act and thing whatsoever, requisite and necessary to be done in and about the premises, as fully to all intents and purposes as the party of the first part might or could do if personally present. And the said party of the first part, for himself, his heirs, executors, administrators and assigns doth further covenant to and with the said parties of the second part, their heirs and assigns, that he, the said party of the first part, his heirs, executors, administrators and assigns, shall not, nor will sell or in any way dispose, or authorize any other person or persons to sell or in any other way dispose of any lands, tenements, hereditaments, and real estate whatever, to which he, the said party of the first part is or may be in any way entitled or interested or to receive from any person or persons, any sum or sums of money, which are due and owing the said party of the first part, for the sale of any real estate, or in any way impair or revoke the power hereby given to the said parties of the second part, their heirs and assigns, by the said party of the first part, unless the said parties of the second part, their heirs or assigns neglect or refuse to pay the said party of the first part, his heirs, executors, administrators or assigns the just and full sum of twenty-five thousand dollars, ($25,000,) on or before the first day of July, in the year one thousand eight hundred and fifty, and the further sum of twenty-five thousand dollars, ($25,000,) on or before the twenty-ninth day of September, in the year one thousand eight hundred and fifty; and the further sum of seventy-five thousand dollars, ($75,000,) on or before the first day of July, in the year one thousand eight hundred and fifty-one, making in all the just and full sum of one hundred and twenty-five thousand dollars, ($125,000,) and the said party of the first part, his heirs, executors, administrators and assigns, doth further covenant to and with the said parties of the second part, their heirs, that in case the said party of the second part, their heirs and assigns pay to the said party of the first part, his heirs, executors, administrators or assigns, the just and full sum of twenty-five thousand dollars, ($25,000) on or before the first day of July, one thousand eight hundred and fifty, and the further sum of twenty-five thousand dollars ($25,000,) on or before the twenty-ninth day of September, in the year one thousand eight hundred and fifty, and the further sum of seventy-five thousand dollars, ($75,000,) on or before the first day of July, in the year one thousand eight hundred and fifty-one, making in all the just and full sum of one hundred and twenty-five thousand dollars, ($125,000,) then this instrument is to take effect as a full and complete conveyance in fee of all and singular the lands, tenements, hereditaments, appurtenances, and real estate in the State of California, belonging to, or in which the said party of the first part, his heirs, executors, administrators or assigns, is or are in any way entitled or interested. And the said party of the first part, for himself, his heirs, executors, administrators, and assigns, doth further covenant to and with the said parties of the second part, their heirs and assigns, that in case the said party of the first part, his heirs, executors, administrators, or assigns, in any way

neglect or refuse to fulfill the above covenants, made by the said party of the first part, for himself, his heirs, executors, administrators, or assigns, then this instrument is to take effect immediately thereupon, as a full and complete conveyance in fee of all and singular the lands, tenements, hereditaments, appurtenances, and real estate whatsoever and wheresoever in the State of California, belonging to, or in which the said party of the first part, his heirs, executors, administrators or assigns, is or are, in any way entitled or interested.

"In witness whereof the said party of the first part hath hereunto set his hand and seal, the day and year first above written.

"Signed,          JOHN A. SUTTER, Jr."

It is stipulated by the parties, for the purpose of this action, that the sum of $125,000, the amount of the purchase money, was paid.

The points made by the appellants are : First, that the deed is void, for want of a description of the premises.   Second, that the payment of the purchase money, according to the terms of the deed, is a condition precedent to vesting the title, and that a performance of such conditions cannot be presumed; that the act precedent to the vesting of the title must be shown, before the deed will be effectual to bar or protect the claimant under it, as against the grantor's title.   And third, that a subsequent purchaser would not be affected by the deed, though the same were duly acknowledged and recorded.

The first question which naturally suggests itself, is as to the character of the conveyance from Sutter Jr., to Brannan and others.

It is contended by the respondent: first, that the instrument in question is a deed conveying the legal title, *in presenti.*   And second, that if there was not a conveyance of the legal estate, the equitable title passed to the grantees, and the conveyance operates as a covenant to stand seized to their use; and that the equitable title is a good defence to this action.

To ascertain the true nature of this instrument, it will be necessary to take it as a whole.   In this connection it may be observed that much of the severity which formerly governed the construction of instruments of this character has been relaxed; the modern doctrine being, so far as possible, to ascertain the intention of the parties, by taking the instrument as a whole.   If we are confined to the strict letter of the deed, then in our opinion it would be void, for want of a sufficient description of the premises conveyed.   The words, "all the estate, right, title, interest, claim or demand, whatsoever, of him, the party of the first part, in law or equity, of, in and to the following described property, situate, lying and being in the city of Sacramento, and State of California, consisting of twenty-two hundred town lots, be the same more or less, said lots being bounded according to the original plan of said city," are insufficient to designate the lots conveyed, and would apply as well to any other twenty-two hundred lots in the city of Sacramento, as the particular ones now claimed to have been sold.   There is nothing to distinguish them from the bulk of the property of the city; no size,

situation, or value, and nothing to put the subsequent purchaser upon notice that they had been sold.   To render a deed valid, the rule is, that there must be two things, parties, and a subject matter.   As land rests in grant, these essentials must be shown by the grant, viz. : the grantor, the thing granted, and the person to whom granted.   The thing granted cannot rest in parol, but must be shown with that distinctness of description that will enable it to be identified.   The law requires that the conveyance of land shall be in writing, but is not guilty of the solecism of permitting or providing that the land, to which the title passed, may rest in parol, or need not be in writing.   The general rule upon this subject is, that every conveyance must, either on its face, or by words of reference, give to the subject intended to be conveyed such a description as to identify it; if land, it must be shown so as to afford the means of locating it.   Neel *v.* Hughes, 10 Gill and Johns. Again it is said, if the description in a deed be so imperfect that it cannot be understood what land is intended to be conveyed, the deed is void.   5 Ohio, 454; Worthington *v.* Hylyer, 4 Mass., 205; Jackson *v.* De Lancey, 13 Johns.; United States *v.* Forbes, and Byrch *v.* United States, 15 Peters; Jackson *v.* Rosevelt, 13 John.; and Kea *v.* Robison, 5 Iredell Equity, 373.

It needs no argument to establish the proposition, that the description of the land intended to be conveyed in the instrument before us is insufficient within the rule established by the authorities cited, and that the deed would be void, on account of a patent ambiguity, which cannot be cured by parol evidence.   Latent and patent ambiguities are thus defined by Lord Bacon : " There be two sorts of ambiguities of words; the one is *ambiguitas patens,* and the other, *latens : patens* is that which appears to be ambiguous upon the deed or instrument; *latens* is that which seemeth certain and without ambiguity, for anything that appeareth upon the deed or instrument; but there is some collateral matter out of the deed that breedeth the ambiguity.   *Ambiguitas patens* is never holpen by averment, and the reason is, because the law will not couple and mingle matter of specialty, which is the higher account, with matter of averment, which is of inferior account in law; for that were to make all deeds hollow, and subject to averment, and so, in effect, that to pass without deed, which the law appointeth, shall not pass but by deed.   Therefore, if a man give land to J. D., *et* J. S., *et hæredibus,* and do not limit to whether of their heirs, it shall not be supplied by averment to whether of them the intention was the inheritance should be limited.   But if it be *ambiguitas latens,* then otherwise it is ; as if if I grant my manor of S. to J. F. and his heirs, here appeareth no ambiguity at all; but if the truth be that I have the manors both of south S. and north S., this ambiguity is matter in fact; and, therefore, it shall be holpen by averment, whether of them was that the party intended should pass." See Bac. Max. Reg., 23 ; 2 Parsons on Cont., p. 72.

This definition would be perfectly conclusive of the whole case, had we not already intimated our intention to reject the more rigid

rules of construction, and by an examination of every part of the deed, extract, if possible, the intention of the parties.

It is a rule of construction, that the covenants of a deed cannot be resorted to, to aid the defective description in the *habendum* or premises of the same, or to extend the premises. But taking this deed as a whole, it is apparent that the intention was to convey all of the real estate of the grantor, in the State of California. If, however, we resort to the covenants of the deed, for the purpose of explaining the premises, we are not at liberty to disregard those covenants, but must give to them the full intention of the parties. This intention, as it most undoubtedly appears from the recital of the covenants, was not to pass the title of the estate, until the payment of the $125,000 purchase money. The vendor constituted Brannan and others his attorneys, to sell and dispose of the same, reserving the legal title in himself, until the conditions of the instrument had been complied with.

Assuming, then, that the instrument is not a deed of bargain and sale, passing the title *in presenti*, to the grantees, let us next inquire whether it can be supported as a covenant to stand seized to the use of the bargainees.

Before the passage of the Statute of Uses, (Henry the VIII,) conveyances of land by bargain and sale, and covenants to stand seized to uses, did not exist. In such cases, the title did not pass, but a use was raised in favor of the bargainee or covenantee; and the party was forced to rely upon his covenant, or resort to a Court of Chancery for relief. These covenants were afterwards executed by operation of the statute, which passed the title or legal estate to the bargainee or covenantee.

To sustain a covenant to stand seized to uses, considerations of blood or marriage were necessary. 10 Bacon Abr., Title, Uses & Trusts, 145; 2 Black., 338; 4 Kent, 495; Wiseman's Case, 1 Coke, 447. In opposition to this doctrine, I have been able to find but one authority— that of Jackson *v.* Dansbaugh, 1 Johns. Cases, 92, in which the Court used the following language: "The next point to be examined is, whether the pecuniary consideration, in the first deed, is sufficient to raise a use, by way of covenant, to stand seized. It has been a general opinion that no considerations, but those of blood and marriage, are sufficient for that purpose. This appears to me to be an error. It is true, that such is the case in England; but it has been so since the Statute of Enrollments only—before which time covenants, to stand seized, could be raised on pecuniary considerations. The intent of this statute being to restore the notoriety of conveyances, the Courts of justice, to forward the views of the Legislature, and to prevent evasions of the law, determined that where the consideration of a deed was pecuniary, which was of a private or secret nature, it should not take effect as a covenant to stand seized, which did not require enrolment, but as a bargain and sale, which did. Considerations of blood and of marriage, being of a public nature, and always having sufficient noto-

riety attached to them, did not fall within the same reason, and therefore were held competent to support a covenant to stand seized."

It is to be observed that the opinion of the Court, in this case, is founded upon the supposed operation of the Statute of Enrollments. Before the passage of this act, or the Statute of Uses, a bargain and sale could only be supported by a pecuniary consideration, (Hilliard on Real Property,) while a covenant to stand seized to the use of another would be good, if founded on consideration of blood or marriage. The Statute of Enrollments did not affect the latter, but left them precisely as they stood before its passage.

"To check the multiplication of secret conveyances, by means of bargain and sale, after the Statute of Uses," says Mr. Hilliard, in his work on Real Property, "another Act, 27 Henry 8, Ch. 19, was soon passed, requiring this conveyance to be made by deed, indented and publicly enrolled, or recorded. This Act did not extend to deeds, which could operate otherwise than as a bargain and sale—such as a feoffment, release, or covenant to stand seized; although if enrolled, they might also operate in this way. Nor did it apply to estates for years." The intention of the statute being to give notoriety to conveyances, it was not deemed necessary to require the enrollment of covenants to stand seized to uses, as they were supported by considerations sufficiently public in their nature; and they stood, as they did before the Statute of Uses, except that, by the statute, the use became executed, and the title passed. Had it been understood that such uses could be raised by a pecuniary consideration, it appears to me that the same policy which required deeds of bargain and sale to be recorded, would have been extended to them also.

The case of Jackson *v.* Dansbaugh, is not supported by the later decisions of the same Court. See Jackson *v.* Sebring *et al.*, 16 Johns., 515; Jackson *v.* Cadwell, 1 Cowen, 643; Jackson *v.* De Lancy, 4 Cowen, 431. See, also, French *v.* French, 3 N. H., 239; Underwood *v.* Campbell, 14 N. H., 393; Sanders on Uses and Trusts, 80; 4 Greenleaf's Cruise, 107. Authorities without number might be multiplied on this point, but we deem it unnecessary. It will be borne in mind that a covenant, to stand seized to uses, only operated as a conveyance by virtue of the Statute of Uses, which has never been in force in California; and, consequently, such a mode of conveyance is unknown to the laws of this State. But, if we should be wrong upon this proposition—which we confess we have approached with no small degree of reluctance, on account of the difficulties attending its investigation, involving a branch of law for the first time brought before this Court, and with no access to such authorities as would assist in our investigation, still, we are of opinion that it is unnecessary, for the purposes of this decision, to determine whether any other considerations than those of blood or marriage are sufficient to support a covenant to stand seized to uses; as we are satisfied, from a full examination of the instrument, that it was designed as an executory agreement for the sale of the property therein described; or a conveyance on condition prece-

dent, dependent for its validity on the performance of an act *in pais*; that the payment of the purchase money was a condition precedent to the vesting of the legal estate, is a proposition which follows so clearly, from the terms of the instrument, that we entertain no doubt of it whatever. A deed, on condition precedent, is not a title, or proof of title; because the fee is dependent, not on the terms of the deed, but proof of the performance of those terms. It is the event which casts the title, not the deed. That this was the design of the parties, I think appears too clearly from the covenants of the deed to require any argument whatever; and the rational intention, as gathered therefrom, was, that the vendor only bound himself to convey, upon the payment of the purchase money. Now, although it has been stipulated, for the purpose of this case, that the purchase money was paid, still, it is not admitted that such payment was made before or after the sale to the present plaintiff, or that he, in fact, had any notice whatever of such payment. It becomes, therefore, necessary to inquire, what was the effect of the recordation of the instrument, and whether the plaintiff took the same, charged with notice of the equitable title of the vendees; as we are satisfied that an equitable defence may be set up, in an action of ejectment, to defeat the plaintiffs' recovery—thus avoiding a circuity of action.

The recording Act of this State was designed to establish one system of notices, by which every one would be able to ascertain what incumbrances existed upon real estate, and by affording a convenient depository for liens and conveyances of lands, (to which all might have access,) substitute the constructive notice, thus established by operation of law, in place of all other kinds of notice. If such was not the intention of the Legislature, we have studied the Act to little purpose, and to them must be ascribed the folly of passing a law without any intention, the effect of which is to confuse titles and render them more uncertain, if possible, than they were before.

At common law, the registry of a deed is not even *prima facie* evidence of title, and imports no notice whatever, and the purchaser is put upon inquiry in every case. The inconvenience arising from the English rule upon this subject, has induced the passage of registry laws in every State in the Union, the intention being to do away with all notice, other than that given by statute, except, probably, actual notice in fact, attended with such circumstances as amount to fraud on the part of the purchaser.

If then, the instrument in question is to be considered a conveyance *in presenti*, it imports no notice, by reason of the insufficiency of the description of the premises conveyed; if an executory contract, its recordation is not authorized by the statute of this State, and, therefore, if recorded, imports no notice. Kerns v. Swope, 2 Watts, 78 : Stansell v. Roberts *et. al.*, 13 Ohio, 148 ; 12 Smedes & Marshall, 262 ; 6 B. Monroe, 671. Other authorities might be cited to this proposition, but we deem it unnecessary.

If it be contended that the possession of the defendants put the

plaintiff upon inquiry, and that it was his duty to ascertain the character of the defendants' possession and title, we answer, that it was the intention of the statute to protect the purchaser of the legal title against latent equities, or mere executory agreements, and to abolish the presumption of notice arising from possession.

For the foregoing reasons the judgment is reversed, and the cause is remanded.