MILLS *against* COMSTOCK.

*M.*, in 1807, to secure a debt, executed a mortgage of land, of which he was seized in fee, to *H.* In *March*, 1808, *M.* executed a convey-ance of the same land, in fee, to *H.*, by an absolute deed, with full covenants, which was duly recorded in *April* following. *H.* gave *M.* a bond, dated *June* 7, 1808, conditioned that if *M.* paid *H.* 400 dol-lars, on the 1st of *December*, 1809, he would reconvey the land to *M.*, subject to the mortgage; but this bond or defeasance was never re-corded; and the conveyance of the equity of redemption from *M.* to *H.*, appeared on record as an absolute deed. On the 1st of *May*, 1809, *H.* sold and assigned over the bond and mortgage to the de-fendant. On the 11th of *October*, 1816, *H.* sold and conveyed the premises, by a deed in fee, with full covenants and warranty, to the plaintiff, who was a *bona fide* purchaser, for a valuable consideration, without notice of the bond or defeasance from *H.* to *M.*, or of the assignment of the bond and mortgage from *H.* to the defendant: *Held*, that the bond or defeasance from *H.* to *M.* not having been re-gistered, the conveyance of the equity of redemption by *M.* to *H.* was to be deemed, in regard to third persons, as an absolute deed; and the legal and equitable title being united in *H.*, the latter was merged in the former: and that the bond or defeasance from *H.* to *M.*, and the assignment of the bond and mortgage from *H.* to the de-fendant, were fraudulent and void, as against the plaintiff.

THE bill, filed *April* 2, 1817, stated, that the plaintiff, on the 11th of *October*, 1816, purchased of *Benjamin Herrick* a farm, in *Homer*, in the county of *Cortlandt*, for which he paid him 4,000 dollars; and received of him a deed of con-veyance, of that date, duly executed, with the usual cove-nants and warranty; which deed was duly recorded in *Cort-landt* county, on the 24th of *October*, 1816. That *H.* at the time of the purchase and sale, represented himself as seized of the premises, and that they were free from all incumbran-ces: that the plaintiff gave credit to those assurances, and made the purchase without notice of any incumbrances. That on the 15th of *March*, 1817, the plaintiff first had no-

tice that the farm was advertised for sale, under a power contained in a mortgage, dated *November* 28, 1807, executed by *Abraham Miller* and his wife to *Nathan Conkling* and *Benjamin Herrick, jun.* The bill charged, that before *November*, 1807, *A. Miller* was seized of the premises, and that if he executed a bond, and the mortgage above mentioned, the consideration thereof was furnished from the joint interest and copartnership funds of *Conkling & Herrick*. That *M.* afterwards came to an agreement with *H.*, who acted for *C.* and himself, that *H.* should pay to *M.* the further sum of 300 dollars; and in consideration thereof, and in discharge and satisfaction of the mortgage, *M.* agreed to give his deed in fee for the premises, to *H.*; and that *M.* accordingly did, on the 7th of *March*, 1808, execute and deliver to *H.*, a deed in fee for the premises, with full covenants and warranty, and the consideration expressed was $300 which *H.* paid, and received the deed as an accord and satisfaction of the mortgage, and it was so accepted; and that thereby the mortgage became merged, satisfied, and discharged, and was no longer a lien on the premises, against the plaintiff, as a *bona fide* purchaser, without notice. That soon after, *Conkling* and *H.* came to an adjustment of their joint interest in the farm, and *H.* paid or secured to *C.* about 900 dollars, and *C.* released to *H.* all his right and interest in the bond and mortgage and farm, by deed, dated *September* 7, 1808, which release has since come into the power or possession of the defendant. That the defendant pretends that *C.* on the 17th of *September*, 1808, assigned his interest in the bond and mortgage to *H.*, who assigned the same, on the 1st of *May*, 1809, to the defendant for a valuable consideration. That the defendant knew that the mortgage was invalid, and the assignment was without consideration, and given for usurious purposes, and that the mortgage was satisfied before the assignment to the defendant. That the assignment was not recorded before the plaintiff purchased the farm. That *H.* has paid large sums to the defendant, and that but

a small part of the money, for which the assignment was given as collateral security, remained due. The bill *prayed*, that the plaintiff might be protected in his possession and title, discharged of the mortgage, and that the mortgage might be cancelled of record, and, with the assignment, be delivered up to the plaintiff; and that the defendant be enjoined from proceeding to sell under the mortgage, and from disturbing the plaintiff in his possession, and for general relief, &c.

The *answer* of the defendant admitted the seisin of *Miller*, and that being indebted to *C.* and *H.* in the sum of 2,366 dollars, he did, on the 28th of *November*, 1807, execute to them a bond for that sum, payable *December* 1, 1809, and a mortgage of the land in *Homer*, which was duly registered *December* 19, 1807. That on the 17th of *September*, 1808, *C.*, by deed, sold and assigned to *H.*, for the consideration of 2,266 dollars, all his right and interest in the said bond and mortgage. That *H.* offered to assign the bond and mortgage to the defendant for *Dutchess* turnpike stock, representing the bond and mortgage to be valid and unpaid : and on the 1st of *May*, 1809, the defendant assigned to *H.* such turnpike stock, and *H.*, by deed, in consideration of 2,274 dollars and 28 cents, assigned the bond and mortgage to the defendant, with a covenant by the defendant, that he should not enforce payment of the principal in five years ; and *H.* covenanted that the interest should be paid annually, by *M.* the mortgagor, or by *H.*, and that at the end of the five years, the principal should be paid by the mortgagor or by *H.* : and it was further covenanted, that if, at the end of five years, *H.* should pay the amount of the mortgage debt and interest, the right and interest so assigned by *H.*, should cease. The defendant averred, that when he took the assignment, he had no knowledge of any interest or title of *H.* in the premises, other than as mortgagee ; nor did *H.* pretend to any other. That *H.* delivered to the defendant the bond

and mortgage, with the assignment, but the latter was not recorded. That the transaction was *bona fide,* and not usurious. That *H.,* at divers times, from 1810 to 1815, paid the defendant interest on the bond and mortgage, which payments were regularly endorsed on the assignment; that no other payments had been made by *H.* or the mortgagor. That in 1816, the interest being unpaid, the defendant advertised the premises for sale, under the power contained in the mortgage. The defendant admitted that *H.* conveyed some right or interest in the mortgaged premises to the plaintiff; and that the plaintiff had taken possession, and made some improvements. But he denied that the mortgagor, for the consideration of 300 dollars, and in satisfaction and discharge of the mortgage, did, on the 7th of *March,* 1808, give a deed in fee to *H.,* or that *H.* paid *M.* the 300 dollars, and received a deed in fee, in accord and satisfaction of the mortgage, as the plaintiff had alleged. He admitted that the mortgagor, on the 7th of *March,* 1808, applied to *H,* for goods on a credit; and that *H.* agreed to let him have goods to the amount of 300 dollars, on the security of the mortgaged premises, and to give him time for payment to the 1st of *December,* 1809 ; and that the mortgagor did execute and deliver to *H.* an absolute deed, with full covenants, under the assurance that he should have time to redeem, as above mentioned : that the deed was recorded by *H.* as an absolute deed, on the 22d of *April,* 1808; and that *H.* gave to the mortgagor a writing or bond for 400 dollars, conditioned that if the mortgagor paid to *H.,* on the 1st of *December,* 1809, 400 dollars, with interest, he was to reconvey, or execute a good and sufficient deed to the mortgagor, except the incumbrance, &c. and the bond then to be void, &c.

Proofs were taken by both parties; and the cause came on to be heard, on the 27th of *March.*

1821.

MILLS
v.
COMSTOCK.

1821.

MILLS
v.
COMSTOCK.

*J. Tallmadge,* for the plaintiff, stated the following points :
1. That the mortgage to *C.* and *H.,* now held by the defendant, was merged and satisfied in the legal estate acquired by the subsequent deed from the mortgagor to *H.*

2. That the neglect of the defendant to record the assignment of the mortgage to him, has been the means of fraud, and ought not to prejudice the plaintiff, who is a *bona fide* purchaser, without notice.

3. That the deed from *M.* to *H.* was an absolute deed ; it was for an entire new consideration ; and there was no provision for the repayment of the money or interest.

4. The agreement between *M.* and *H.* was not collateral to the deed ; but for a repurchase, and is, by the terms of it, void, for want of performance on the part of *H.*

5. That even if the parties have equal equity, the plaintiff having the legal title, is to be preferred.

6. That the transaction between *H.* and the defendant was usurious.

7. That *M.* was excluded, by his own acts, from claiming any title in the land.

8. That *Miller* was not an admissible witness, to destroy his own deed, and open the right of redemption.

He cited, 2 *Caines' Cases in Error,* 124, 132. 2 *Cruise's Dig. tit. Mortgage, tit.* 15. *ch.* 1 *sect.* 32. *Cas. Temp. Talbot,* 61. *Powell on Mort.* 28. 30. 34. 40. 1 *P. Wms.* 268. 1 *N. L. R.* 373. 3 *Johns. Ch. Rep.* 58. 18 *Vesey,* 384. 1 *Vernon,* 271. *Powell on Mort.* 281. 282. 194. 195. *Sugden's Law of Vendors,* 480. 483. 2 *Vernon,* 370. 554. 1 *P. Wms.* 394.

*Oakley,* contra, made the following points : 1. That *B. Herrick's testimony* ought to have been rejected on the ground of interest.

2. That the transactions between *H.* and the defendant were not usurious

3. That the conveyance from *Miller* to *H.* was intended merely as a security for goods sold ; and that when the defeasance was given, it became, emphatically, a mortgage.

4. That there was no merger of the first mortgage, as was pretended, because it was not so intended, and because it would be an act inconsistent with the second transaction.

5. That there was no evidence in the case, that the plaintiff had paid *H.* the consideration money, *before* he had actual notice of the existence of the mortgage in the hand of the defendant.

6. That if the parties had equal equity, the Court would leave them to their remedies at law.

He cited, 2 *Atk.* 631.   3 *Atk.* 304.  *Sugden's Law of Vend.* 487.   1 *N. R. L.* 510.

THE CHANCELLOR.   The plaintiff appears in the character of a *bona fide* purchaser, for a valuable consideration, without notice that the mortgage set up by the defendant was outstanding and subsisting.   On the contrary, he had notice, by means of the *Onondaga* records, that the equity of redemption of *Miller*, the mortgagor, had been released to *Herrick*, from whom he purchased.

The short state of the case is, that *Miller*, the owner of the land, gave a mortgage of it to *Conklin* and *Herrick*, on the 28th of *November*, 1807, to secure the payment of a bond, and that mortgage was forthwith duly registered. The bond was payable on the 1st of *December*, 1809. On the 7th of *March*, 1808, *Miller* conveyed the same land to *Herrick*, by an absolute deed, in fee, with full covenants of title ; and the deed was duly recorded in *April* following. On the 7th of *June*, 1808, *Herrick* gave *Miller* a bond, with a condition, that if *Miller* paid him 400 dollars, on the 1st of *December*, 1809, he was to reconvey the land to *Miller*, subject to the mortgage, but this bond or defeasance was never registered, and the conveyance from *Miller* to *Herrick*

*April* 30*th*

of the equity of redemption stood upon record as an absolute deed. *Conklin's* interest in the bond and mortgage was assigned to *Herrick*, on the 17th *September*, 1808. On the 1st of *May*, 1809, *Herrick* assigned over the bond and mortgage to the defendant, who now claims to hold the mortgage, as a valid and subsisting incumbrance, in opposition to the subsequent purchase by the plaintiff, from *Herrick*.

In the first place, it was the duty of one of the parties to the conveyance of the equity of redemption from *Miller* and *Herrick*, to have had the defeasance created by the bond of the 7th of *June*, 1808, registered, so as to give notice of the real character of the deed of the 7th of *March*, 1808. (*Laws, vol.* 1 373. *sec.* 3.) It had been put upon record, as an absolute deed, and there was nothing to gainsay it, and every person dealing with *Herrick*, had a right to presume, and was chargeable with notice, that *Herrick* was the absolute owner, and that *Miller* had parted with his equitable title by this last deed, as he had already parted with his legal title by the mortgage. The legal and equitable titles had united in *Herrick*, and the latter had, of course, merged in the former. This was the language of the official notice of the record, and when the defendant afterwards, on the 1st of *May*, 1809, took from *Herrick*, an assignment of *Miller's* bond and mortgage, he took no better title than *Herrick* himself had in the character of an original mortgagee, and he was chargeable with notice of the release by *Miller*, of the equity of redemption. *Herrick* was no longer mortgagee, but a purchaser of the whole interest of *Miller;* and whatever conveyance *H.* afterwards made of his interest in the premises, that conveyance ought to have been recorded, in order to protect the party against subsequent *bona fide* purchasers from *H.* But the defendant did not record the deed of assignment, and the subsequent purchaser from *H.* had no means of knowing that the

mortgage was still regarded as subsisting; and *Miller*, by omitting to record his deed of defeasance, and the defendant, by omitting to record his deed of assignment, lost their titles under those instruments, as against subsequent purchasers. If this were not the case, then they would have enabled *Herrick*, by their negligence, to commit a fraud upon *bona fide* purchasers, and the verity of the records and the language of the recording act, would prove a snare to the unwary. But the words of the statute are too strong to admit of any such abuse or evasion : " All deeds and conveyances of or concerning, or whereby any of the military bounty lands may be any way affected in law or equity, shall be recorded, &c. and every such deed and conveyance shall be adjudged fraudulent and void against any subsequent purchasers or mortgagee for valuable consideration, unless recorded, &c. before the recording the deed or conveyance under which such subsequent purchaser or mortgagee should claim." (*Laws N. Y. sess.* 17. *ch.* 1. *sec.* 1.)

There were provisions in the deed of assignment of the mortgage to the defendant which, connected with the subsequent acts of *H.* and the defendant, are sufficient to create an inference that the assignment was intended to be concealed. I have no doubt that intention existed on the part of *Herrick,* and the defendant seems to have lent his sanction to it, by the very form of the assignment, which he accepted. The mortgage was to secure a bond payable on the 1st of *December,* 1809 ; yet it was agreed between *H.* and the defendant, that the latter was not to enforce payment, until the expiration of five years, and *H.* covenanted, that he would see that the interest was annually paid ; for he agreed, that the interest should be paid by the mortgagor, *or by him,* and that if at the expiration of the five years, he, *Herrick,* should pay the principal, the right so assigned should cease. If this assignment was intended as a fair and absolute transfer of the bond and mortgage, the ordinary course would have been to have left *Miller,* the mortgagor, to pay the debt and

1821.

MILLS
v.
COMSTOCK.

interest, as they became due, according to the tenor of the bond. Instead of this, *H.* officiously assumes the payment upon himself, and the defendant accepts of his covenant upon an agreement, without consulting *Miller*, to give nearly five years of extended time, beyond the terms of the bond. The parties contracted with each other as if *H.* and not *Miller*, was the debtor, and was to be exclusively charged with the payment of the bond ; and in pursuance of this agreement, it appears, that the annual interest, down to *May*, 1815, was actually paid by *H.* There does not seem to have been any communication between the defendant and *Miller*, and it has very much the appearance of a combination between the defendant and *H.* to keep the claim under the mortgage from the knowledge of the mortgagor himself. Its tendency was to enable *H.* to appear to the world, as the absolute owner, and to deal with the public as the real owner, which he effectually did by the deed to *Pugsley*, in 1810, and by the coercion of a release of dower from *Miller's* wife, in the same year, and by the sale to the plaintiff, in 1816. When *Miller* attested the deed to *Pugsley*, in 1810, he must have considered *H.* as the absolute owner, or he was knowingly auxiliary to a fraud.

Under the circumstances of the case, I consider the plaintiff entitled to hold the land discharged of the pretended incumbrance set up by the defendant ; and that if the assignment of the mortgage to the defendant was not void on the ground of fraud, (which I much incline to believe,) yet that as the defeasance to the deed from *Miller*, and as the assignment of the mortgage to the defendant, were neither of them recorded, the plaintiff is entitled to protection, under the statute, as a *bona fide* purchaser for a valuable consideration. There is no notice, either actual or constructive, with which he is to be charged.

I shall, accordingly ,decree, that the defendant be perpetually enjoined from prosecuting or from selling under the

mortgage.  I have had some difficulty on the question of costs ; but as the defendant declares, in his answer, that when he took the assignment of the bond and mortgage, he had no knowledge of any interest or title in *H.*, other than as mortgagee, and as there is no direct proof sufficient to countervail this averment in the answer, I have not thought the case quite strong enough to charge him with the costs of this suit.