[No. 996.]

BROPHY MINING COMPANY, RESPONDENT, *v.* BRO-
PHY AND DALE GOLD AND SILVER MINING
COMPANY, APPELLANT.

EQUITY—EFFECT OF RE-CONVEYANCE OF TITLE.—S. held a deed of mining
ground as a mortgage to secure an existing indebtedness; he conveyed
the premises to P., and after two or more transfers of the title, the
property was redeeded to S.: *Held*, that when the title returned to S.,
the same equities attached to it in his hands as existed at the time he
made the conveyance to P.

QUITCLAIM DEED—SUFFICIENT TO CONVEY LEGAL TITLE—BONA FIDE PUR-
CHASER. —A quitclaim deed conveys whatever interest the grantor has
in the property at the time the conveyance is made, and, although it is
intended as a mortgage, it will, if absolute in form, vest the legal title
in the grantee and is sufficient to protect the rights of an innocent pur-
chaser for value.

IDEM—BONA FIDE PURCHASER—NOT AFFECTED BY ANY LATENT EQUITY
WITHOUT NOTICE.—The *bona fide* purchaser of a legal title is not affected
by any latent equity of which he has no notice, actual or constructive.

PAYMENT OF PURCHASE MONEY—WHAT CONSTITUTES—BEFORE RECEIVING
NOTICE.—A mining claim was purchased for one thousand dollars in
coin, and fifteen thousand shares of stock in a corporation thereafter to
be formed. The money was paid; but only a portion of the certificates
for shares of stock were delivered to the grantor before the purchaser
received notice of the equities of plaintiff: *Held*, that the purchase
money was paid before notice.

POSSESSION—NOT NOTICE OF UNRECORDED DEFEASANCE.—The open and
notorious possession by a grantor, after sale and conveyance of property,
is not sufficient to impart notice, to a subsequent purchaser for value, of
any unrecorded defeasance. (Hawley, J.)

IDEM—POSSESSION NOT OPEN AND NOTORIOUS.—Upon the evidence: *Held*,
that the possession of original grantor was not open, notorious, and ex-
clusive; nor in any manner inconsistent with his deed. (Leonard, J.,
and Beatty, C. J.)

APPEAL from the District Court of the First Judicial Dis-
trict, Storey County.

The facts sufficiently appear in the opinion.

*Kirkpatrick & Stephens, and R. H. Taylor*, for Appellant:

I. As to what constitutes a *bona fide* purchaser, counsel
cite the following authorities. (2 Story Eq. Jur., secs.
1232, 1502; 2 Lead. Cas. Eq. 36, 43, 63, 73, 80, 82; *Union
Canal Co.* v. *Young*, 1 Whart. 432; *Jackson* v. *Summerville*,

13 Pa. St. 359; Story Eq. Pl., sec. 604*a*; 3 Serg. & R. 422–432; 32 Mass. 87.)

II. The money must be wholly paid before notice. (Bump on Fraud. Con. 477; Wade on Notice, secs. 60, 93; Willard's Eq. Jur. 256, 609; 1 Perry on Trusts, secs. 220–1; *Blanchard* v. *Tyler*, 12 Mich. 339; *Palmer* v. *Williams*, 24 Mich. 329.)

III. The onus of proving payment is on the purchaser. (*Lloyd* v. *Lynch*, 28 Pa. St. 419; *Bolton* v. *Johns*, 5 Id. 151; *Dresser* v. *Missouri and Iowa R. R. Co.*, 93 U. S. 92.)

IV. Upon the reconveyance of the estate to Sullivan, the original equities re-attached to it in his hands. "His conscience stands bound by the violation of his trust and meditated fraud." (Wade on the Law of Notice, secs. 61, 62, 63, 243; *Allison* v. *Hagan*, 12 Nev. 55; 1 Story's Eq. Jur., secs. 261, 409, 410; *Troy Bank* v. *Wilcox*, 24 Wis. 671, 676; *Armstrong* v. *Campbell*, 3 Yerg. 201; *Church* v. *Church*, 25 Pa. St. 278; 2 Lead. Cas. in Eq., pt. 1, p. 40.)

V. Tagliabue having acquired his title by a quitclaim deed can not be regarded as a *bona fide* purchaser for value without notice. (*May* v. *Le Claire*, 11 Wall. 232; *Oliver* v. *Piatt*, 3 How. 410; 11 Id. 322; 3 Story C. C. 365; 39 Tex. 67; 42 Me. 517; 20 Mo. 81.)

VI. A grantee in a quitclaim deed is not a purchaser without notice of equities affecting his grantor. (*Stoffel* v. *Schroeder*, 62 Mo. 147; 39 Tex. 273; *Marshall* v. *Roberts*, 18 Minn. 405; Wade on Laws of Notice, sec. 204; 2 Lead. Cas. in Eq., pt. 1, p. 72; *Graff* v. *Middleton*, 43 Cal. 343–4; *Carpentier* v. *Williamson*, 25 Id. 154; *Downer* v. *Smith*, 24 Id. 123; 21 Ala. 125; *Rogers* v. *Burchard*, 34 Tex. 441.)

VII. As between Sullivan and Brophy no title passed by the mortgage deed. (Civ. Pr. Act, sec. 262.)

VIII. In *Jackson* v. *Lodge*, 36 Cal. 28, this provision was held applicable to a mortgage in the form of a deed absolute. It is true that the doctrine of that case was subsequently modified in *Hughes* v. *Davis*, 40 Id. 117, but that modification has not been adopted by this court. (*Hyman* v. *Kelly*, 1 Nev. 179.) In the recent case of *Pierce* v. *Traver*, 13 Id. 526, this court impliedly assents to the doctrine that

title does not pass by an absolute deed intended as a mortgage.

IX. Neither Tagliabue nor plaintiff were *bona fide* purchasers, because they did not receive their conveyances nor pay any part of the purchase price before notice of the rights and equities of Brophy and his vendees.

It is a fact admitted by the pleadings that the defendant and its grantors, from the first of January, 1879, and ever since, have been in possession of the premises, holding them adversely to the plaintiff. This possession was of itself notice, or evidence of notice, and Tagliabue and the plaintiff were bound thereby. (*Daubenspeck* v. *Platt*, 22 Cal. 330; *Pell* v. *McElroy*, 36 Id. 268; *Talbert* v. *Singleton*, 42 Id. 395.)

X. In addition to such presumptive notice, Tagliabue and the plaintiff had actual notice of the equities of the defendant, while a greater part of the purchase price agreed to be paid to Sullivan still remained in their hands.

In no conceivable view of the case can the plaintiff be held entitled to the protection of a *bona fide* purchaser.

*Seeley & Woodburn*, for Respondents:

I. The record nowhere shows that Tagliabue had any manner of notice that the deed from Brophy to Sullivan was intended as a mortgage prior to the filing of the answer of the defendant.

II. It is well settled that the plea of purchase for a valuable consideration without notice bars both a legal and equitable claim, it being contrary to equity and good conscience to dispute the title of one who honestly and *bona fide* has paid his money for the purchase of an estate.

III. When a deed intended as a security is recorded, the defeasance not being recorded, a purchaser for value from the grantee without notice of the defeasance will hold an absolute title against the grantor and his grantees. (Thos. on Mort. 156; *Mills* v. *Comstock*, 5 Johns. Ch. 214; *Whittick* v. *Kane*, 1 Paige, 202; *Cole* v. *Bolard*, 22 Pa. St. 431.)

IV. A court of equity will declare a deed absolute on its face, given as security for a debt, a mortgage, and allow

the grantor to redeem both as against the original grantee and parties who purchase from him with knowledge. (*Kuhn* v. *Rumpp*, 46 Cal. 299; *Leahigh* v. *White*, 8 Nev. 150.) The converse of the principle laid down in the two cases just before mentioned must necessarily be true.

V. Questions as to the effect of parol agreements upon deeds absolute in their terms can only arise between the parties or purchasers with notice. (Wash. on Real Prop. vol. 2, p. 61.) This being the law, it follows that the plaintiff being from the proof a purchaser without notice, no right of redemption can exist against it, and the deed under which it holds can not be converted into a mortgage by parol testimony.

VI. A deed, absolute upon its face, although intended as a mortgage, conveys the legal title. (*Hughes* v. *Davis*, 40 Cal. 117; *Espinosa* v. *Gregory*, 40 Id. 58.)

VII. The deed from Sullivan could not possess the character of a mortgage unless Tagliabue had full knowledge of the agreement between Brophy and Sullivan, and purchased with intent to defeat the right of the grantor. (15 Vt. 755.) Continued possession by the grantor of land, after the making of his deed, will not be notice of a defeasance held by him which is not recorded. (*Kunkle* v. *Wolfersberger*, 6 Watts. 126; *Newhall* v. *Pierce*, 5 Pick. 450; *Hennessy* v. *Andrews*, 6 Cush. 170; *Crassen* v. *Swoveland*, 22 Ind. 434.)

By the Court, HAWLEY, J.:

This is an action of ejectment.

Both parties deraign title to the mining claim in controversy from one William Brophy. The material facts are as follows:

On the fifteenth day of September, 1874, Brophy being then the owner and in possession of the mining ground, executed and delivered to M. C. Sullivan a quitclaim deed for said premises.

This deed, though absolute in form, was intended as a mortgage to secure an existing indebtedness, then due and owing from said Brophy to said Sullivan, and to secure said

Sullivan for any future indebtedness that might thereafter accrue to him from said Brophy.

. Sullivan, on the thirtieth day of September, 1878, conveyed the premises to Thomas B. Pheby. On the fifteenth day of November, 1878, Pheby conveyed the same to Henry Rosener. On the twentieth day of March, 1879, Rosener conveyed the premises to Sullivan. On the same day, March 20, Sullivan conveyed the premises to F. Tagliabue. At the time of the execution of the last-mentioned deed it was agreed between Sullivan and Tagliabue that a corporation should be formed by said Tagliabue, to which the title and interest of said Sullivan should be transferred; that in consideration of such transfer Sullivan was to receive one thousand dollars in coin, and fifteen thousand shares of the stock of said corporation, to be delivered at stated periods thereafter. Tagliabue conveyed the premises to the corporation, and it was organized in pursuance of said agreement. The capital stock was divided into one hundred thousand shares of the par value of one hundred dollars per share. Tagliabue subscribed for ninety-nine thousand six hundred shares, and upon its organization became, and still is, the president and one of the directors thereof.

One thousand dollars was paid by Tagliabue to Sullivan at the time of the execution of the deed. One thousand shares of stock was delivered to Sullivan on the first day of April; four thousand on the fifteenth or twentieth of May; five thousand on the twenty-seventh of June, 1879, and five thousand remained in the hands of the company to the credit of Sullivan at the time of the trial.

On the thirty-first day of March, 1879, William Brophy conveyed the same premises to one J. H. Lieman, and the said Lieman on the twelfth day of April, 1879, conveyed the same to the corporation, defendant and appellant, in this action.

The deeds executed by the respective parties were all quit-claim deeds.

The complaint alleges that the defendants wrongfully entered upon said premises on the first day of January, 1879. On the nineteenth day of August, 1878, M. C. Sullivan

brought suit in the district court of Storey county to have the deed from Brophy to him adjudged to be a mortgage, and to have the same foreclosed.

This suit, on the eighth day of October, 1878, was, on motion of Sullivan, and before it was brought to issue, dismissed.

The court, in addition to the facts already stated, found "that the plaintiff at the time of the commencement of this action was and now is the owner in fee of the premises in dispute and entitled to the possession thereof; that at the time of the commencement of this action defendant was wrongfully in possession of said premises, unlawfully holding them adversely to the plaintiff."

And as conclusions of law the court "found that plaintiff is entitled to judgment in its favor, and against defendant, for the possession of the premises and for costs of the suit."

As applicable to the equity branch thereof, the court, among other facts, found "that said Tagliabue was a *bona fide* purchaser of said premises, for value and without notice of any of the equities mentioned in defendant's answer at the time of said purchase; that he had paid the entire purchase money, and received his conveyance before notice of any of said equities; that said Tagliabue on or about the twenty-fourth day of March, 1879, by deed, conveyed to said plaintiff said premises; that said plaintiff took said conveyance in the capacity of a *bona fide* purchaser for value and without notice of defendant's claimed equities.

As conclusion of law the court found: "That plaintiff is owner in fee of said premises, holding the premises as a *bona fide* purchaser, for value, without notice of any equities in favor of defendant; that defendant is entitled to no relief, and judgment and decrees are ordered accordingly."

1. Is respondent a *bona fide* purchaser ?

Has it shown that the purchase was made in good faith, for a valuable consideration; that the purchase price was wholly paid, and that the conveyance of the legal title was received before notice of the equities of appellants ?

In the consideration of these questions it is only necessary to determine the effect of the transaction as between

Sullivan and Tagliabue. When the title returned to Sullivan the same equities attached to it in his hands as existed at the time he made the conveyance to Pheby. (1 Story Eq. Jur., sec. 410; Wade on Law of Notice, secs. 63, 243; *Kennedy* v. *Daly*, 1 Sch. & Lef. 379; *Troy City Bank* v. *Wilcox*, 24 Wis. 671; *Church* v. *Church*, 25 Pa. St. 278.)

If Tagliabue is bound by the equities of appellant, then respondent is bound. The knowledge of each is identical.

Was Tagliabue a *bona fide* purchaser ?

Appellant claims that inasmuch as Sullivan could not have maintained an action of ejectment against Brophy, or his vendees, to recover possession of the premises, it follows that Tagliabue, claiming from Sullivan under a quitclaim deed, can not maintain such an action.

This position, under the facts of this case, is not tenable.

A quitclaim deed is sufficient to convey whatever interest the grantor had in the property at the time the conveyance was made. As between Sullivan and Brophy the deed executed by Brophy to Sullivan was a mortgage, but being absolute in form it vested the legal title to the property in Sullivan. (*Hughes* v. *Davis*, 40 Cal. 117.) Hence it follows that the deed executed by Sullivan was sufficient to convey the legal title to Tagliabue.

The mere fact that this conveyance was a quitclaim deed does not deprive Tagliabue of the character of a *bona fide* purchaser. (*Chapman* v. *Sims*, 53 Miss. 154; *Wilson* v. *Western N. C. L. Co.*, 77 N. C. 445; *Flagg* v. *Mann et al.*, 2 Sumn. 562.) If Tagliabue took this conveyance in good faith, and paid a valuable consideration therefor, without notice of the facts relied upon to convert the deed from Brophy to Sullivan into a mortgage, he acquired the title to the premises. (*Conner* v. *Chase*, 15 Vt. 775; *Whittick* v. *Kane*, 1 Paige Ch. 208; *Stoddard* v. *Rotton*, 5 Bos. 378.)

The court in *Connor* v. *Chase*, in discussing this question, said:

"If the deed from the orator to Chase could have been treated as a mortgage between them, at the time it was executed, it would not have that character as to subsequent purchasers under Chase, nor would they be affected by any

agreement between the orator and Chase, * * * unless the purchasers had full knowledge of the character and nature of the contract and agreement between the parties, and purchased fraudulently, and with the intent thereby to defeat the right of the grantor, the orator in this bill. Under our recording system, a purchaser of one who has the legal title and possession, is not to be affected by the disputes and claims between the legal owner and the claimant in equity, when no suit is pending between them."

When a conveyance, absolute upon its face, is intended as a mortgage, the purchaser from the grantee, with notice of the facts, stands in the place of the equitable mortgagee. But where a deed intended as security is recorded, the defeasance not being recorded, a purchaser for value from the grantee, without notice of the defeasance, will hold an absolute title as against the grantor and his grantees. It is an absolute deed, as regards third persons, and a *bona fide* purchaser will take the land discharged of the equity of redemption of the mortgagor. (Thomas on Mortgages, 156; *Mills* v. *Comstock*, 5 Johns. Ch. 214.)

The truth is, as stated by Mr. Washburn in his work on real property, that "questions as to the effect of parol agreements, or separate instruments upon deeds absolute in their terms, can only arise between the parties or purchasers with notice." (1 Wash. R. P. 496.)

The decisions are uniform that the *bona fide* purchaser of a legal title is not affected by any latent equity founded either on a trust, incumbrance, or otherwise, of which he has no notice, actual or constructive. (*Hogarty* v. *Lynch*, 6 Bos. 138; *Hogan* v. *Jaques*, 19 N. J. Eq. 124; *Gray* v. *Coan*, 40 Iowa, 327; *Hull* v. *Swarthout*, 29 Mich. 249 *Carter* v. *Allen*, 21 Grat. 249; *Bassett* v. *Nosworthy*, 2 Eq. Lead. Cas. pt. 1, p. 32 *et seq.*, and authorities there cited.)

2. Was the purchase money paid before notice? The evidence, in my opinion, shows that it was.

The property was purchased by Tagliabue for one thousand dollars, which was paid at the time of the execution and delivery of the deed. This was the real consideration of the property purchased.

It is true that it was further agreed that a corporation should be formed, and that certificates for fifteen thousand shares of stock representing three-twentieths of the mine should be thereafter delivered to Sullivan. When the corporation was organized these shares were placed to his credit; but, as before stated, all of the certificates were not delivered to Sullivan prior to Tagliabue's receiving notice of appellant's equities. Under the agreement Tagliabue was only entitled to shares of stock representing seventeen-twentieths of the mine. For this he paid the full consideration at the time of his purchase. He had parted with every thing of value to him before receiving any notice. Neither he nor the corporation had any interest in, or claim to, the shares of stock agreed to be delivered to Sullivan.

Under these circumstances it seems to me that it can not consistently be claimed that the purchase money was not wholly paid before notice.

3. Was the possession of Brophy sufficient to put Tagliabue upon inquiry as to Brophy's equitable rights?

This is the most important question presented in this case.

As a general rule the authorities declare that open, notorious, and exclusive possession and occupation of lands by a stranger to a vendor's title, as of record, at the time of a purchase from and conveyance by such vendor out of possession, is sufficient to put such purchaser upon inquiry as to the legal and equitable rights of the party so in possession, and such vendee is presumed to have purchased and taken a conveyance from the vendor with full notice of all legal and equitable rights in the premises of such party in possession and in subordination to these rights; and this presumption is only to be overcome or rebutted by clear and explicit proof on the part of such purchaser, or those claiming under him, of diligent, unavailing effort by the vendee to discover or obtain actual notice of any legal or equitable rights in the premises in behalf of the party in possession.

It does not clearly appear that Tagliabue had actual notice of Brophy's possession at the time he purchased the property, and if the rule above stated is applicable to the

facts in this case, it is, in my opinion, very doubtful whether Brophy's possession is shown to be of such an open and notorious character as to impart constructive notice.

From the views I entertain of this case it may be admitted that the pleadings and proofs show that Tagliabue had notice of the fact that Brophy was in possession of the property on the first day of January, 1879, and that he continued in the possession thereof up to and at the time of the delivery of the deed from Sullivan to Tagliabue.

This presents the question whether the fact of the possession of real estate or mining property, by a vendor thereof, after transfer of his legal title thereto by deed, is sufficient to put a subsequent vendee of the same premises, while so in the possession of the original vendor, upon inquiry as the equitable rights of such original vendor, and subject such subsequent purchaser to the same rules as when a stranger to the title of his vendor, as of record, is in possession. Upon this point the authorities are conflicting. Section 26 of the act concerning conveyances in this state provides that every conveyance of real estate, "which shall not be recorded as provided in this act, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded." (1 Comp. L. 254.)

In California, under the provisions of this act, the supreme court decided that it was the intention of the act to protect the purchaser of the legal title against latent equities, and to abolish the presumption of notice arising from possession. (*Mesick* v. *Sunderland*, 6 Cal. 297.)

In *Daubenspeck* v. *Platt*, 22 Cal. 333, the court, without any reference to the statute or to the previous decisions, in a case where property was conveyed by a deed absolute upon its face and a defeasance in the form of an agreement to reconvey the property upon the payment of a stipulated sum of money within a certain time, and where the deed was recorded, but the defeasance was not recorded, declared that the possession of the mortgagor was sufficient to put

subsequent purchasers upon inquiry and to charge them with the rights of the mortgagor.

In *Pell* v. *McElroy*, 36 Cal. 268, the court discuss this question at length, and arrive at the conclusion that the continued possession of a vendor after his formal conveyance of the legal title is a fact in conflict with the legal effect of his deed, and is presumptive evidence that he still retains an interest in the premises, and is sufficient to put a purchaser upon inquiry, and subject him to the general rule heretofore announced in case of the party in possession being a stranger to the title as of record. As a reason given for this conclusion, the court say: "An absolute deed divests the grantor not only of his legal title, but right of possession; and when such grantor is found in the exclusive possession of the granted premises long after the delivery of his deed, here is a fact antagonistic to the fact and legal effect of the deed; and we can not appreciate the justice, sound reasoning, or policy of a rule which would authorize a subsequent purchaser, while such fact of possession continues to give controlling prominence to the fact and legal effect of the deed, in utter disregard of the other notorious prominent antagonistic fact of exclusive possession in the original grantor. He can not be regarded as a *purchaser in good faith* who negligently or willfully closes his eyes to visible, pertinent facts, indicating adverse interest in or incumbrances upon the estate he seeks to acquire, and indulges in possibilities or probabilities, and acts upon doubtful presumptions, when by the exercise of prudent, reasonable diligence he could fully inform himself of the real facts of the case."

There are other authorities which maintain this to be the correct doctrine.

I am, however, of opinion, that the continued possession of the land by Brophy after he had conveyed the legal title to Sullivan, would not be notice of any defeasance held by him which was not recorded.

In Massachusetts, under a statute similar to that of California and of this state, the supreme court have frequently decided that the open and notorious possession by the

grantor will not be sufficient to impart notice to the purchaser of any unrecorded defeasance. (*Pomeroy* v. *Stevens*, 11 Met. 244; *Hennessy* v. *Andrews*, 6 Cush. 171; *Mara* v. *Pierce*, 9 Gray, 306; *Parker* v. *Osgood*, 3 Allen, 487, *Dooley v. Wolcott*, 4 Id. 407; *Lamb* v. *Pierce*, 113 Mass. 73.)

In Indiana, under a similar statute, the decisions are to the same effect. In discussing this question, the court, in *Crassen* v. *Swoveland*, said: "But it is claimed that as it was found that Swoveland was in possession of the land at the time that Whitney purchased it, this was constructive notice. As a general proposition, the doctrine that possession of real estate is constructive notice to all the world of the rights of the parties in possession is conceded. But the doctrine has no application to the case before us. * * * Our statute on the subject of registry * * * requires actual notice to defeat a purchaser where the defeasance has not been duly recorded. Possession has never been held anything more than constructive notice. Such constructive notice does not come within the statute. This is in accordance with the authorities. Says an elementary writer: 'Nor will the continued possession by the grantor of land, after the making of his deed, be notice of a defeasance held by him which is not recorded.' 1 Wash. on Real Prop., p. 495, sec. 22." (22 Ind. 434.)

Hilliard, in his work on vendors, says: "In case of an unrecorded prior conveyance, it has been sometimes held, that the possession of the grantee is of itself constructive notice, equivalent to that derived from registration. But the prevailing doctrine is now otherwise. Thus, it is said, 'the doctrine in the English law of constructive notice of the title of the lessee or party in the possession, is not favored in the American courts.' So, Judge Story says: 'The American courts seem indisposed to give effect to this doctrine of constructive notice from possession, even in its most limited form. The English cases admonish courts of equity in this country, where the registration of deeds, as matters of title, is universally provided for, not to enlarge the doctrine of constructive notice, or to follow all English cases on this subject, except with a cautious attention to a

just application to the circumstances of our country, and to the structure of our laws.'" (Hilliard on Vendors, 411; *Scott* v. *Gallagher*, 14 Serg. & R. 333.)

Story says, in speaking of the Registry Acts, that: "The object of all acts of this sort is to secure subsequent purchasers and mortgagees against prior secret conveyances and incumbrances." (1 Story Eq. Jur., sec. 397.)

In *Van Keuren* v. *C. R. R. Co.*, the court, without reference to any statute, after announcing the general rule that possession of land is notice to a purchaser of the possessory title, say: "But this rule does not apply to a vendor remaining in possession, so as to require a purchaser from his grantee to inquire whether he has reserved any interest in the land conveyed.

"So far as the purchaser is concerned, the vendor's deed is conclusive upon that subject; having declared, by his conveyance, that he makes no reservation, he is estopped from setting up any secret arrangement by which his grant is impaired.

"The well-settled rule applies to this case, that a party is estopped from impeaching or contradicting his own deed, or denying that he granted the premises which his deed purports to convey." (38 N. J. L. 167.)

Upon a review of the whole case, I am of opinion that in the absence of actual notice of the agreement between Brophy and Sullivan, that Tagliabue and respondent had the right to rely and act upon the averments made by Brophy in his deed to Sullivan, that his conveyance of the title was absolute, and, having thereby divested himself of all title and right of possession, that he continued in possession in subordination to the title of his vendee, and that they are entitled to protection as *bona fide* purchasers for value.

The judgment of the district court is affirmed.

LEONARD, J., concurring:

In my opinion it is unnecessary to decide, in this case, how evidence of open, notorious, exclusive possession by Brophy, at the time of Tagliabue's purchase, would have affected plaintiff's case; and I express no opinion as to whether

proof of such possession would, or would not, be evidence
of implied notice of the equities claimed by defendant. It
is enough to say that it is not necessarily true from the alle-
gations in the complaint, that such was the character of
Brophy's possession at the time Tagliabue received his deed
from Sullivan, and paid the purchase money; and there was
no evidence that Brophy's acts at that time, and for a long
time prior thereto, were at all inconsistent with what, from
the record, appeared to be the truth; that is, that Sullivan
was the sole owner. From all the authorities, Tagliabue had
a right to believe that Sullivan was such owner, and to act
upon that belief, unless Brophy's possession was so open,
notorious, and exclusive as to amount to implied notice of
his equities. Tagliabue swore that, at the time of the pur-
chase, and when he received the deed and paid the purchase
money, he had no knowledge or notice of Brophy's claim,
and that he believed he was obtaining a perfect title. It
nowhere appears that he was not justified, as a reasonably
careful business man, to so believe. (See *Havens* v. *Dale*, 18
Cal. 366; *Bell* v. *Twilight*, 2 Fost. N. H. 518; *Hewes* v. *Wis-
well*, 8 Greenl. 97; Hill. on Vend. 410.)

As modified above, I concur in the opinion of Mr. Justice
Hawley.

BEATTY, C. J.: I concur.